## No. 11,738.

### JOHN BARKLEY VS. SUCCESSION OF S. B. STEERS ET AL.

Though the subsequent acquisition by a vendor of property which he had sold before he was the owner thereof inures to the benefit of his vendee, the latter's rights are held subordinated to the vendor's privilege and special mortgage, with which the property passed unencumbered into the ownership of their vendor, and these rights are cut off by a judicial adjudication made to the mortgage creditor in the settlement of his succession.

A person can not invoke a breach of warranty between his own vendor and the
person who sold to him, unless there be privity between himself and that
vendor in respect to the subject matter of the call in warranty. In the absence
of privity his own contract measures his rights of warranty.

APPEAL from the Civil District Court for the Parish of Orleans.
Théard, J.

Plaintiff by notarial act passed before Woulfe, notary public, on the 18th of July, 1890, acquired from the succession of Thomson the ownership of a lot of ground with all the buildings and improvements thereon, situated in the First District of New Orleans, in the square bounded by St. Joseph, Peters (late New Levee), Julia and Commerce streets, and among other lots one designated as lot No. 111 on said square No. 54, which lot measured seventeen feet three inches and four lines on Peters street, by one hundred feet in depth, with width on the rear line of seventeen feet six inches and five lines. Adjoining said lot No. 111 is property belonging to the successions of Schuyler B. Steers and Frederick Saville. He claims that the successions of Steers and Saville have encroached on said lot No. 111 and have placed thereon a brick wall covering a triangular portion of said lot No. 111 to the extent of eight feet three inches front on Peters street, running back the full depth of the said lot one hundred feet, with a width in the rear of one foot three inches. That he is the absolute owner of said triangular portion of ground, part of said lot No. 111. That the strip of land is fully worth one thousand dollars. He prayed that he be decreed owner of said property; that he be placed in possession thereof, and that defendents be condemned to pay him one hundred dollars per annum for the use thereof from the 16th of July, 1890, until final delivery.

Defendants aver that the property belongs to themselves; that the brick wall alluded to in plaintiff's petition is a part of the building formerly known as the Crescent City Refinery Company, which was erected about the year 1861 by the late Adam Thomson, the same person from whose succession the plaintiff claims title, and said Thomson acquired the said property by purchase from R. Prague and others by act *passed before Castell,* notary public, on the *18th of November, 1881;* that on the *20th of December, 1882,* the said Thomson entered into a written agreement by which he bound himself to sell to the Crescent City Sugar Refinery Company all the

property known as the Crescent City Sugar Refinery, situated on Peters and Common streets, together with and including all the buildings and improvements thereon, etc., which agreement was annexed to and made part of an act of sale before Andrew Hero, a notary public, is dated 30th January, 1883, by which said Adam Thomson sold to said Crescent City Sugar Refinery Company the said property in which is included the property in dispute in this case and said Adam Thomson bound himself in said act, and is and was bound in law, to warrant and defend the title to said property thus sold by him.  That on the 12th of June, 1886, Harry T. Howard acquired said property by deed from the United States Marshal of that date, and acquired all the rights of warranty possessed by the said Crescent City Sugar Refinery Company, and defendants acquired said property by purchase from said Howard with all the rights of warranty, and therefore the said Adam Thomson is the warrantor of defendants.  That shortly after the completion of the sale by Adam Thomson to the Crescent City Sugar Refinery Company, in which company Thomson was a stockholder, there was a claim made somewhat similar to the one made here by the then owner of plaintiff's property, and in order to settle all doubt, Thomson purchased the said lot now pretended to be owned by plaintiff from George A. Hero, by act before Andrew Hero, Jr., notary public, on the 27th October, 1883, that plaintiff was cognizant of all these facts at the time and was fully aware of them when he made his purchase as alleged in his petition.  Respondents do not admit that George A. Hero had any right, title or interest in the property, and specially deny the same, but should it be held that he did transfer the property in dispute to said Thomson by the said sale, then said Thomson acquired for the use and benefit of the Crescent City Sugar Refinery Company in satisfaction of his agreement and contract of the 29th of January, 1882, and of the act of sale before Hero, notary, of January 30, 1883.  They aver that if they are obliged to remove their wall and surrender the piece of property in question great damage will ensue to them to the amount of three thousand dollars, for which amount the succession of Thomson will be liable to them in warranty.

They called the succession of Thomson in warranty, and asked that plaintiff's demand be rejected.

The succession of Thomson, through the executrix, averred that Adam Thomson, by act of 30th January, 1883, before Andrew Hero, in fulfilment and execution of previous written agreement of December 29, 1882, sold to the Crescent City Sugar Refinery Company the property in said act described, but she specially denied that the succession owes any warranty to the defendants, as claimed by them in reference to the narrow strip or triangle referred to. That Thomson never sold to the said company the property embracing the said narrow strip, referred to in this case as encroached upon, because Thomson subsequently acquired it from G. A. Hero, and sold to the plaintiff by act before Woulfe, notary; that said plaintiff, Barkley, had full knowledge at the time of purchasing, and previously thereto, of the encroachment by the neighboring proprietor; that the strip was not owned by Thomson at the time of the sale to the Crescent City Sugar Refinery Company, as was well known to both plaintiff and defendants at the time of their respective purchases.

Judgment was rendered recognizing plaintiff as the owner of the property sued for, and decreeing that he be placed in possession thereof, but dismissing his demand for revenues; and also one in favor of the succession of Thomson on the call in warranty and against defendants, dismissing their call in warranty with costs.

Defendants appealed.

*William S. Benedict* and *Hugh C. Cage* for Plaintiff, Appellee.

*Saunders, Miller, Smith & Hirsh* and *Guy M. Hornor* for Defendants, Appellants.

*Jos. C. Gilmore* for Succession of Thomson, called in warranty, Appellee.

Argued and submitted, April 26, 1895.
Opinion handed down, May 20, 1895.

The opinion of the court was delivered by

NICHOLLS, C. J. It seems to be conceded that when Adam Thomson sold to the Crescent City Sugar Refinery Company, on the 30th

day of January, 1883, the property described in the act of sale of that day, before Andrew Hero, notary public, that the ownership of the few feet of land which are in contestation in this suit was not in the vendor, Adam Thomson, but in the widow and heirs of Prague.

It is contended, however, that Thomson intended to sell and the company intended to buy this small strip, and that Thomson subsequently, on the 27th day of October, 1883, bought from George A. Hero (its then owner) lot No. 111, of which it formed a part, in order by so doing, to comply with his legal obligations as vendor, and to complete and perfect the title of the refining company. That this result followed *ipso facto* by effect of law without the necessity of a direct act of transfer to the company, under a line of decisions holding that, though the sale of another's property be null, yet the vendor's subsequent acquisition vests the title at once in the vendee. Evans vs. Gray, 12 Martin, 649; Woods vs. Kimball, 5 N. S. 246; Fenn vs. Rils, 9 La. 100; Louisa A. Lee vs. Ferguson, 5 An. 532; Succession of Dupuy, 33 An. 277. That there was no necessity that there should be evidence on the books of registry of this change of ownership so operated from Thomson to the company, because the plaintiff who acquired lot No. 111 at a sale made in the succession of Adam Thomson was aware at the time of and prior to his purchase of the rights of the company.

We do not think it necessary to determine whether plaintiff was possessed of such information on the subject as defendant asserts he had, for the reason that lot No. 111, as we understand the record, went into the ownership of Adam Thomson, struck by the vendor's privilege, which resulted from his purchase of the same in favor of his vendor, and by the special mortgage which he granted to secure the credit portion of the price. Assuming that Thomson's purchase enured to the benefit of the refinery company, it could only do so in subordination to the real rights of third persons existing on the property at the moment of its acquisition. The plaintiff, at the time of the succession sale, held Adam Thomson's note, secured by the vendor's privilege and special mortgage above mentioned. The refinery company could not successfully oppose the enforcement of the mortgage and privilege by a sale of the succession property, and when the sale took place it extinguished any rights which Thomson had in the property, and any which the

refinery company might have predicated upon Thomson's rights, which were subject to be defeated and were defeated through the mortgage and privilege.

Defendants did not buy from Adam Thomson or the succession of Adam Thomson, but from Harry T. Howard, who has not been made a party to the suit. They claim that there is no necessity for his being made a party, for the reason that in their purchase from him he transferred to them, with full subrogation to his rights, all actions or rights of action which he himself had or might have against prior vendors of the property. Howard himself did not buy from Adam Thomson, or the succession of Adam Thomson, but at a judicial sale, made in enforcement of a mortgage claim which he held against the Crescent City Sugar Refinery Company. How his claim originated is not shown. An examination of the marshal's deed to Howard shows *that no portion of Lot No. 111* was covered by his mortgage or his purchase—what he seized and what he purchased was the *property adjoining Lot No. 111*, which was seized and sold as having a frontage of twenty-three feet two inches and seven lines (23 feet 2 inches and 7 lines) on Peters street, and as belonging to the Crescent City Sugar Refinery Company. We do not understand that the title to that property as so described has ever been questioned as not having really belonged to the Crescent City Sugar Refinery Company under its purchase from Adam Thomson, or as not having belonged to Thomson under his purchase from Mrs. Rosina Prague. Howard, at the sale, acquired title to the precise object on which he held a mortgage, and as between him and the company there has existed no claim in warranty. It is true that after Thomson had acquired this particular piece of property from Mrs. Prague, which is known throughout these proceedings as *Lot "A,"* of Pilié's plan of October 25, 1881, he, in error as to the exact boundary between it and lot No. 111, encroached upon the latter lot by building a wall upon it a little over eight feet beyond his line, and that after he had sold this Lot "A," together with other property, to the Crescent City Sugar Refinery Company, the company claims that that particular strip was intended to be purchased by them and intended to be sold to them by Thomson, not as falling under the *description of the land* sold in the act, but because in an act *sous seing privé*, which had formed the basis of the sale, and which was attached to the act of sale, Thomson had described the property as "the

property known as the Crescent City Sugar Refinery, together with and including all the buildings and improvements thereon, the machinery, fixtures, engines, boilers, pipes, kettles, vats, boneblack and appurtenances therein contained or thereunto belonging, and now or herebefore in use or placed thereon for use, such as the whole now stands," but no such contention, so far as we see by the record, existed as between Howard and the Refinery Company. As between them there seems to have been no perpetuation of the error which might have existed between Thomson and the company, no mistake nor misunderstanding as to exactly what was mortgaged or bought by him at the marshal's sale, and there has been no breach of warranty by the company to him. When Howard purchased Lot "A" at the marshal's sale he acquired a right of recourse in the event he should be evicted from that particular property, but he acquired no right in warranty against Thomson, on account of other property, by reason of the relations between him and the Crescent City Sugar Refinery Company. After Howard had acquired Lot "A" at the marshal's sale, calling for a front on Peters street of twenty-three feet two inches and seven lines, he undertook to sell the same lot, among other property, as having a front on that street of "thirty-one feet five inches and seven lines, more or less," adding on, as will be seen, to the property actually bought by him the property in dispute in this case.

In his act of sale to Steers it is patent from the warranty clauses that he was aware he was going beyond the title acquired by himself at the marshal's sale. The act declares that for the consideration, and on the terms and conditions set forth therein, he sold, conveyed, transferred, assigned and set over the property described to the defendants, with a full guarantee against all troubles, debts, mortgages, liens, evictions, alienations or other encumbrances of every kind and nature whatsoever, binding himself and his heirs to defend the property and appurtenances conveyed against all legal claims and demands, which warranty, however, in so far as it concerns eight feet three inches nearest St. Joseph street, of the front of Lot "A," is limited to the defence of any suits in reference thereto, and the payment of all attorney's fees and costs that the purchasers may incur, and in case of loss or eviction therefrom, the vendor shall only be liable to pay one thousand dollars, which was fixed as the price or value of said eight feet and three inches, exclusive of said attorney's fees and costs.

We see no claim in warranty against the succession of Thomson as arising from the purchase of this small strip of land from Howard by the defendants. The deed to Howard did not pretend to convey to him title to it. There is no privity between Howard and the succession of Thomson in regard to it, and he has set up no such claim.

Defendants contend that in the act of sale to them, Howard transferred to them all the rights and actions of warranty to which he was or might be entitled against all former proprietors of the property and appurtenances therein conveyed, subrogating them to the said rights and actions to be by them enjoyed, and exercised in the same manner as they might or could have been by himself.

Granting that under such a clause the last purchaser could at once and directly attack the most remote vendor liable under the warranty, we think the links were broken between Howard and the succession of Thomson. He had no claim against the Crescent City Sugar Refinery Company in respect to the property in contest here, and could transfer none against it nor against the succession of Thomson to the defendants. We see nothing in the record by reason of which Howard, or any one holding under him, could examine into and avail himself of the relations existing between Thomson and the Crescent City Sugar Refinery Company. The act of mortgage of the company to Howard is not in the transcript. We have no reason to suppose that it contains a transfer to Howard by the company of any distinct independent claim or right of action which the company has or pretended to have against Adam Thomson in respect to this strip of land, with reference to which there is no evidence that the parties were then contracting. Howard's own contract is the measure of his rights. If he got everything which that contract called for, he could ask no more.

In reaching our conclusions in this case we have been called upon to deal with a very unsatisfactory record, and from the course pursued by the parties, to assume some matters which should have been fixed by positive evidence. As matters stand and appear to us we think the judgment appealed from is correct, and it is hereby affirmed.